UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-1362 JGB (KKx)** | Date | August 16, 2017 |
| Title | *Tracy Randall et al v. Cambria Company, LLC et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    Order GRANTING Plaintiffs' Motion to Remand (Dkt. No. 10) (IN CHAMBERS)

Before the Court is Plaintiffs' motion to remand the action to state court. (Dkt. No. 10.) After consideration of the papers filed in support of and in opposition to the motion, as well as the arguments of the Parties presented at the August 14, 2017 hearing, the Court GRANTS the motion.

## I.    INTRODUCTION

On September 30, 2016, Tracy Randall ("Randall"), Jamie Macknickie ("Macknickie"), Andrea Mills ("Mills") and Denise Pierce ("Pierce") (collectively, "Plaintiffs") initiated this action against Cambria Company LLC ("Cambria") and Karen Alciatore ("Alciatore") (collectively, "Defendants") in California Superior Court for the County of Riverside. ("Complaint," Dkt. No. 1-1.) In brief, the Complaint alleges that, while employed at Cambria, Plaintiffs were subjected to numerous sexist and racist comments by their managers and retaliated against when they complained about these comments. Based on these allegations, Plaintiff alleged six causes of action: (1) retaliation; (2) harassment; (3) associational harassment; (4) wrongful termination; (5) failure to prevent harassment, discrimination, and retaliation; and (6) declaratory judgment.

On July 6, 2017, more than nine months after this action was filed, Defendants removed the action to this Court on the basis of diversity jurisdiction, asserting that Alciatore—a California resident—was a fraudulently joined individual sham defendant. (Not. of Removal,

Dkt. No. 1.) Plaintiffs subsequently filed the instant motion to remand the action to state court, countering the contention that Alciatore is a sham defendant and challenging the removal on the basis of untimeliness. ("Motion," Dkt. No. 10.) Defendants opposed the motion on July 24, 2017. ("Opp'n," Dkt. No. 12.) Plaintiffs filed their reply memorandum on July 31, 20. ("Reply," Dkt. No. 13.) The Court held a hearing on the matter on August 14, 2017.

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). As such, federal courts only have original jurisdiction over civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

Moreover, the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also Jackson v. Specialized Loan Servicing, LLC, No. CV 14-05981 MMM PLAX, 2014 WL 5514142, at *6 (C.D. Cal. Oct. 31, 2014) (quoting Gaus). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Jackson, 2014 WL 5514142, at *6. Doubts as to removability must be resolved in favor of remanding the case to state court. Id. (internal citations omitted).

But removal is proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or sham defendant. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). As the Ninth Circuit has explained, "fraudulent joinder is a term of art" and requires courts to look at whether a plaintiff has failed to state a cause of action against a resident defendant. Id. Thus, the defendant must show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant. Id.; see also Padilla v. AT & T Corp., 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (defendant seeking removal based on alleged fraudulent joinder "must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant" but must also show that "there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant"); Gloger v. Lynch, No. 2:16-CV-05445-CAS-E, 2016 WL 4770015, at *3 (C.D. Cal. Sept. 12, 2016) (noting that "the burden of proving a fraudulent joinder is a heavy one" because "the removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court"); Hurd v. Am. Income Life Ins., No. CV-13-05205 RSWL-MRW, 2013 WL 5575073, at *3 (C.D. Cal. Oct. 10, 2013) ("The defendant must demonstrate that *there is no possibility* that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.") (internal marks omitted) (emphasis in original). Finally, the Ninth Circuit has explained that the

general rule is that "the propriety of removal is determined solely on the basis of the pleadings filed in state court." <u>Williams v. Costco Wholesale Corp.</u>, 471 F.3d 975, 976 (9th Cir. 2006).

### III.    DISCUSSION

**A. Fraudulent joinder**

Under 28 U.S.C. § 1446(b), a defendant must file a notice of removal within 30 days from the date he first objectively learns that an action is removable. A defendant may learn that an action is removable in one of two ways: through the face of the initial pleadings or through the receipt "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b); <u>Harris v. Bankers Life & Cas. Co.</u>, 425 F.3d 689, 692 (9th Cir. 2005). Courts in this Circuit have found that a deposition constitutes an "other paper" under the statute. <u>See, e.g.</u>, <u>Riggs v. Cont'l Baking Co.</u>, 678 F. Supp. 236, 238 (N.D. Cal. 1988); <u>see also</u> <u>Amarant v. Home Depot U.S.A., Inc.</u>, No. 1:13-CV-00245-LJO-SK, 2013 WL 3146809, at *5 (E.D. Cal. June 18, 2013) ("Interrogatory responses and other discovery documents as well as deposition testimony can constitute an "other paper" under Section 1446(b), triggering the second 30–day period for removal.") Accordingly, Defendants argue that their removal was timely because it was filed within thirty days of the last of the Plaintiffs' depositions.[1] (Opp'n at 6.) It was not until then, they contend, that Defendants were able to ascertain that Plaintiffs' claims against of harassment against Alciatore were not viable. (<u>Id.</u>)

To the extent that the Complaint asserts allegations specifically against Alciatore, these are as follows:

- In February 2016, Alciatore asked Mills if she would sleep with her boss. (Complaint ¶ 15.)
- In February 2016, Alciatore told Mills she did not like women, that she would never vote for a woman, that a woman should not be president, and that "she did not like women who wear makeup, including Mills." (<u>Id.</u>)
- In February 2016, Alciatore told Randall that it was disgusting that she had dated a black man. (<u>Id.</u>)
- In February 2016, while they were having dinner, Alciatore suggested to Mills and another employee that Hispanic individuals were "only good for" cooking and gardening. (<u>Id.</u>) That same night, Alciatore told them that black people were "dirty," "filthy," and "a drain on society." (<u>Id.</u>) She further stated that "Mexicans and blacks are disgusting." (<u>Id.</u>)
- In April 2016, after Plaintiffs had reported Alciatore's comments to the president of Cambria, Alciatore terminated Macknicki. (<u>Id.</u> at ¶ 25.) The president of

---

[1] The last Plaintiff—Pierce—was deposed on June 6, 2017, and Defendants removed this matter on July 6, 2017, within thirty days of Pierce's deposition. (Opp'n at 6.)

- Cambria subsequently terminated Mills "because Alciatore decided she was not a 'good fit' for Cambria." (Id.)
- In May 2016, Alciatore terminated Randall. (Id. at ¶ 28.)
- In July 2016, Pierce lodged complaints of a hostile work environment to the Senior Vice President of Cambria. (Id. at ¶ 31.) Alciatore terminated her six days later. (Id. at ¶ 32.)

Defendants do not declare outright that these allegations cannot possibly make out a claim against Alciatore, but argue instead that the insufficiency of these claims was made clear through Plaintiffs' deposition testimony. (Opp'n at 7.) To this end, they parse the deposition testimony of the individual Plaintiffs to make various arguments about whether the alleged harassment was sufficiently pervasive, whether the comments in question were specifically directed at the Plaintiffs, and so on. (See, e.g., Opp'n at 3-5.)

The Court finds that these kinds of arguments go to the weight of the evidence and not the sufficiency of the allegations in the Complaint, as required at this stage. As noted above, the standard for remand is not whether plaintiffs will actually or even probably prevail on the merits, but *whether there is a possibility that they may do so*. Couscouris v. Hatch Grinding Wheels, Inc., No. CV 12-4464-GHK AGRX, 2012 WL 2190741, at *2 (C.D. Cal. June 14, 2012). Thus, "the focus of the inquiry must be on the joinder, not on the merits of the plaintiff's case." Reynolds v. The Boeing Co., No. 2:15-CV-2846-SVW-AS, 2015 WL 4573009, at *4 (C.D. Cal. July 28, 2015). This means the Court "may not delve too far into the merits," and must limit itself to "checking for obviously fraudulent or frivolous claims." Id. (internal citations and quotation marks omitted).

Courts in this Circuit have resisted previous attempts to analyze fraudulent joinder cases under a summary judgment framework, explaining that "piercing the pleadings is generally the exception rather than the norm" and that courts should not resolve the merits of plaintiffs' claims at this stage. See id. (noting that "district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them"); see also Munoz v. Lab. Corp. of Am., No. EDCV 15-902-GW(DTBX), 2015 WL 4507104, at *1 (C.D. Cal. July 23, 2015) ("As Plaintiffs express in their Reply brief, the defendants' attempt to argue fraudulent joinder here amounts to an attempt to argue either that Plaintiffs will not prevail against Flanary or that Plaintiffs have not sufficiently alleged a claim against Flanary. That is not the standard for assessing fraudulent joinder in the removal context."); Dahmen v. McNeil-PPC, Inc., No. CV 12-10371-GW(CWX), 2013 WL 12130314, at *2 (C.D. Cal. Jan. 14, 2013) ("[N]otwithstanding the fact that Defendants are entitled to present facts, by way of summary judgment-type evidence, in order to demonstrate fraudulent joinder, the Court is not required to resolve the merits of Plaintiffs' claim at this stage."); Amarant v. Home Depot U.S.A., Inc., No. 1:13-CV-00245-LJO-SK, 2013 WL 3146809, at *7 (E.D. Cal. June 18, 2013) ("Merely showing that the evidence supporting a claim may be insufficient to survive summary judgment against a non-diverse defendant, however, is no more adequate to prove fraudulent joinder than asserting a claim is insufficiently pled such that it may not survive a motion to dismiss."); Awasthi v. InfoSys Techs. Ltd., No. C-10-0783 JCS, 2010 WL 2077161, at *6 (N.D. Cal. May 21, 2010) ("The law is clear that this Court may not pre-try substantive factual issues in order to answer

the discrete threshold question of whether joinder of a defendant is fraudulent."); Berger v. Harley Ellis Devereaux, No. CV 08-02318 MMM AGRX, 2008 WL 10610129, at *10 (C.D. Cal. June 6, 2008) ("While the court can consider summary judgment-type evidence in assessing the propriety of a fraudulent joinder claim, ultimately, the standard it must apply is closer to a Rule 12(b)(6) standard.").

These cases are consistent with the Ninth Circuit's admonition that joinder is only fraudulent when "the plaintiff's fail[ure] to state a cause of action against a resident defendant . . . is *obvious* according to the settled rules of the state." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007) (emphasis added). This rule statement delineates the scope of the analysis: a court should look to whether the plaintiff has stated a claim—*not* whether she has proven it. Moreover, the requirement that the failure to state a claim be obvious precludes removal under the circumstances at hand, where Defendants seem to have conceded that the allegations in the Complaint are sufficient to state a claim against Alciatore,[2] and challenge only whether such allegations have been borne out by the evidence. Again, this goes to an analysis of the merits, not the sufficiency of the allegations. And, while Defendants argued at the hearing that this Court may "pierce the pleadings" to analyze whether Plaintiffs have viable claims against Alciatore, such factual inquiry is appropriate "only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." Dahmen, 2013 WL 12130314, at *2 (internal citations and quotation marks omitted). In sum, allowing Defendants to remove the case on the merits on the basis of evidence developed during discovery would undermine the removal standard, which focuses on the *possibility* that the state court could recognize a cause of action.

What's more, *even if* such analysis were appropriate, the Court disagrees that the allegations cannot not rise to the level of harassment. Under FEHA, harassment consists of a type of conduct not necessary for performance of a supervisory job, but rather "of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." Id. This includes: (a) verbal harassment, e.g. epithets, derogatory comments or slurs on a basis enumerated in the Act; (b) physical harassment, e.g. assault, impeding or blocking movement, or any physical

---

[2] If Defendants believed that such allegations were insufficient, they should have removed the case nine months ago. Their attempt to avoid this conclusion is unsuccessful: they argue that they "could not ascertain that there was no possibility for Plaintiffs to amend their complaint to state a viable claim against Alciatore until the last of them was deposed" because the Complaint "does not reveal the ground for removability." (Opp'n at 6.) But "it is Defendants' responsibility to analyze the facts and law as alleged in the original complaint to determine whether the suit is removable." Knutson v. Allis-Chalmers Corp., 358 F. Supp. 2d 983, 996–97 (D. Nev. 2005). While the subsequent discovery that certain facts alleged in the complaint are untrue may be grounds for removing a case at a later date, "Defendants cannot justify removal based on Plaintiff's failure to establish a more factually or legally compelling case than the case alleged in the initial pleading." Id. Here, Defendants have not actually pointed to anything in the Complaint that is materially false.

interference with normal work or movement, when directed at an individual on a basis enumerated in the Act, or; (c) visual forms of harassment, e.g. derogatory posters, cartoons, or drawings on a basis enumerated in the Act. Cal. Code Regs. Tit. 2 § 7287.6, subd. (b)(1). And, to establish harassment, a plaintiff must show unwelcome conduct that is "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Hurd v. Am. Income Life Ins., No. CV-13-05205 RSWL-MRW, 2013 WL 5575073, at *4 (C.D. Cal. Oct. 10, 2013).

Here, at least one of the Plaintiffs—Mills—has shown that Alciatore subjected her to repeated and outrageous comments about her gender and her race, and that Alciatore directed her termination after she complained about these comments. Based on these allegations, a jury could reasonably conclude that her work environment was hostile. And, if even one of the Plaintiffs has a colorable claim against Alciatore, the Court cannot dismiss her as a sham defendant. See cf. Christ v. Staples, Inc., No. CV 14-07784 MMM JEMX, 2015 WL 248075, at *4 (C.D. Cal. Jan. 20, 2015) ("In order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant.") (internal citations and quotation marks omitted).

Moreover, Defendants make several arguments that directly contradict allegations in the Complaint. For example, Defendants argue that Mills "cannot show that Alciatore harassed her *because* of her Mexican ancestry," and cite to a self-serving declaration and deposition testimony from Alciatore. (Opp'n at 13) (emphasis added). But it is certainly plausible that a jury may not find Alciatore's testimony to be credible.[3] Defendants also argue that, "[a]s none of Alciatore's alleged comments were made in their presence, Macknicki and Mills could not have been the target of harassment—associational or otherwise—and cannot possible state a viable claim of harassment against Alciatore." (Opp'n at 11.) But, as the Complaint indicates, Alciatore made multiple derogatory comments to Mills, including asking whether she would sleep with her boss and stating that she did not like women, that black individuals are "a drain on society," and that "Mexicans and blacks are disgusting." Plaintiffs' deposition testimony reaffirms that Alciatore made such statements to them. (See, e.g., Deposition of Andrea Mills at 113-121.) It is unclear, then, why Defendants think none of these comments were made in her presence.[4] Besides, the

---

[3] Of course, Plaintiffs' allegations also indicate that Alciatore harassed Mills on the basis of gender, not just national origin, and Defendants cannot dispute that Alciatore knew that Mills was a woman.

[4] Defendants' position seems to be that Alciatore's statements were not harassment because they were not *directed at* Mills—e.g., Alciatore "never said, 'Andrea you are a dirty Mexican,'" (Mills Dep. Tr. at 223-225)—but the Court does not find this distinction dispositive. At this stage, it is sufficient to establish a hostile work environment that Alciatore made blatantly disparaging comments about women and Mexicans directly to Mills—who is Mexican and a woman—regardless of whether Alciatore specified in explicit terms that Mills was the direct target of her vitriol.

Court emphasizes that the standard at this stage calls for viewing the allegations in the light most favorable to Plaintiffs, and that the burden is firmly on Defendants to justify removal. And, as discussed above, Plaintiffs′ alleged inability to make out a claim against Alciatore is, at the very least, not "obvious," even if their allegations and evidence would be insufficient to survive summary judgment. On this basis, the Court concludes that Alciatore is not a sham defendant, and that the Parties are therefore non-diverse. Accordingly, the Court GRANTS Plaintiffs' motion to remand the matter to state court.

B.   Attorneys' fees

In addition to remand, Plaintiffs seek attorney fees incurred as a result of improper removal. This is pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has clarified that, "absent unusual circumstances, attorney′s fees should not be awarded when the removing party has an objectively reasonable basis for removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 136 (2005); see also Moore v. Permanente Medical Group, Inc., 981 F.2d 443, 446–47 (9th Cir.1992) (upholding fee award for "wholly unnecessary litigation costs" related to remand motion).

Here, the Court agrees that Defendants have not satisfactorily explained their failure to seek removal within thirty days of service of the Complaint. As noted above, a defendant may justify a later removal following receipt "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). Here, Defendants argue that "[they] could not ascertain that there was no possibility for Plaintiffs to amend their complaint to state a viable claim against Alciatore until the last of them was deposed." (Opp'n at 6.) But Defendants have not pointed to anything in Pierce's deposition that would reveal the case to be removable *and that was not already clear from Plaintiffs' allegations in their Complaint*. For example, one of Defendants' arguments for dismissing Alciatore is that she could not have discriminated against Mills for being Mexican because she did not know Mills was Mexican. (Opp'n at 13.) But this argument—regardless of its viability—could have been made nine months ago: presumably, Alciatore could have raised her lack of knowledge as soon as the Complaint was filed.

Similarly, Defendants argue that Randall's harassment claim cannot survive because Alciatore's statement that it was "disgusting" that Randall's ex was black "refer[ed] to Randall's husband, not her," so "Randall was not the target of the alleged comment." (Notice

---

Defendants also argue that the comments did not occur "in [Mills'] immediate work environment because they took place at a "completely voluntary dinner." (Opp'n at 15.) There is no evidence before the Court to indicate that the dinner with Alciatore was "completely voluntary," rather than part of a work event. In fact, the Complaint indicates that these dinners *were* work events. (Complaint ¶ 15 ("Mills had a work dinner with Alciatore.")) What's more, the deposition testimony reaffirms that the dinner in question was part of a training event. (See Opp'n at 3 (noting allegations that Alciatore made racist remarks "on February 23 and February 24, 2016, in Minnesota while they were there for training."))

of Removal at 7.) But again, *the necessary information was already in the Complaint*; Randall's deposition only confirmed the facts as alleged there. It is therefore disingenuous for Defendants to argue that the deposition somehow "revealed" that Randall did not have standing to make a claim when their argument is based exactly on the allegations as made in the Complaint. What's more, Defendants mischaracterize the evidence on the record, apparently to justify their late removal: they claim that Mills' deposition testimony confirmed that the harassing comments were made "during social gatherings outside the workplace." (Id.) But Mills' testimony in fact indicates that the dinners—during which Alciatore made such comments as telling her that she "didn't like women"—were part of training events. (See Mills Dep. At 117, 139 (explaining that Alciatore set up dinner with her "to talk about our training.")) These weak justifications for waiting until discovery was well underway in state court to remove the case suggest that Defendants were "experimenting" in state court and reserving to themselves the right to remove should their fortunes worsen. This strategy has wasted judicial resources and unnecessarily prolonged the litigation. Altogether, the Court finds that attorneys' fees are justified under the circumstances.

The Ninth Circuit uses the lodestar method for determining a reasonable attorney fee. Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). Under the lodestar method, the court calculates the lodestar figure by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Id. at 363. Counsel for Plaintiffs has provided a declaration that he has spent a total of 15.8 hours, at a rate of $610.00 per hour, in drafting the motion to remand, drafting the reply brief, and preparing for and appearing at the hearing. (Declaration of Cory Hurwitz ¶ 10, Dkt. No. 10-1.) The Court finds the amount charged and time spent by Plaintiffs' counsel in preparing and filing the motion to remand reasonable in light of the necessities of the motion.[5] Accordingly, the Court orders Defendants' counsel to reimburse fees in the amount of $9,638.00.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Alciatore is not a sham defendant, and that there is not complete diversity between the Parties. Accordingly, the Court GRANTS Plaintiffs' motion and REMANDS the action to state court. The Court also GRANTS Plaintiffs' request for attorneys' fees in the amount of $9,638.00.

**IT IS SO ORDERED.**

---

[5] Specifically, preparing the motion required counsel to review the deposition testimony of all the Plaintiffs, among other things, to counter Defendants' characterization of the testimony.